ILLINOIS CENTRAL RAILROAD COMPANY *v*. LULU LUCAS.

[42 South. Rep., 607.]

RAILROADS. *Licensees. Personal injuries.*

One who goes to a part of a railway station not intended for passengers to transact with the manager of a circus, whose train is being there unloaded, business with which the railroad company has no connection, is, while there, a mere licensee, and the railroad company, whose employes were guilty of no willful wrong toward her, and were in fact unaware of her presence, is under no liability for injuries sustained through the negligence of the circus employes in unloading the train.

FROM the circuit court of Attala county.

HON. J. T. DUNN, Judge.

Mrs. Lucas, the appellee, was the plaintiff in the court below; the railroad company, the appellant, was defendant there. From a judgment in favor of plaintiff the railroad company appealed to the supreme court.

The appellee's suit was for damages for personal injuries sustained by her while upon the depot premises of the appellant railroad company in Kosciusko. The proof showed that she had leased to the B. E. Wallace Show Company a tract of land owned by her, and adjacent to the railroad company's depot premises, for exhibition purposes. On the morning the circus reached Kosciusko over the railroad of the appellant railroad company, and while it was being unloaded at the depot, Mrs. Lucas, the appellee, went to the depot to see the business manager of the show company, at his request, in regard to matters pertaining to the lease. To avoid the confusion resultant from the numerous busy employes of the show company and the many spectators around the depot, she was instructed by one of the employes of the show company, who at the time was directing the unloading of the circus, to proceed

to the freight platform adjacent to the depot, where the business manager was expecting to meet her. While upon this freight platform awaiting the manager's coming, and while she was watching the unloading of the circus cars, she was injured by one of the circus wagons as it was unloaded. There was no proof that the appellee was upon the appellant railroad company's platform on the invitation or with the knowledge of any agent or employe of the railroad company, or that she had any business to transact with the railroad company, or that the employes assisting in unloading the circus wagon at the time of injury were employes of the appellant railroad company. It was contended by the appellee that as the railroad company, under its contract of transportation with the show company, hauled the circus cars of the show company, and allowed the show company to use its switch tracks and depot premises for loading and unloading its circus effects, and as appellee was at the time upon the premises of the railroad company when injured, the appellant was liable. The theory of the appellant company was that appellee was a mere licensee, and that appellant owed her no other duty than to refrain from doing her a willful or malicious injury, and on this ground the appellant asked a peremptory instruction, which was refused. The jury returned a verdict for the amount sued for, $1,999, and the railroad company appealed.

*Mayes & Longstreet, and J. M. Dickinson,* for appellant.

It is somewhat difficult to conceive of the principle according to which it is hoped to impose on the railroad company responsibility, under the evidence in this case, for the alleged negligent acts of the circus people. It must be that the theory of possible liability is based on some strained construction of the rule announced in such cases as *Indermaur* v. *Danes,* L. R. 1 C. P., 274, and L. R. 2 C. P., 313; *Bennett* v *R. R. Co.,* 102 U. S., 577, and many other like cases where the proposition

is asserted that a person who visits premises upon business which concerns the occupier, and upon his invitation, express or implied, is entitled to have reasonable care exercised to prevent injury to him, he using reasonable care for his own safety.

But if this is the theory, the contention that such a principle applies is untenable, and is not justified by an understanding of the principle advanced and of the many cases in which it has been enunciated.

The leading cases wherein this proposition has been enunciated, so far as we have examined them, are *Plummer* v. *Dill.,* 32 Am. St. Rep., 463; *Hart* v. *Cole,* 156 Mass., 475; *Indemaur* v. *Danes,* 1 L. R., C. P., 274; *O'Connor* v. *I. C. R. R. Co.,* 44 La. (Ann.), 339 (this is referred to often as a leading case); 77 Mo., 535; *Bennett* v. *R. R. Co.,* 102 U. S., 577; *R. R. Co.* v. *Ferguson,* 38 Am. St. Rep., 217 (57 Ark., 16); Beach on Contributory Negligence, sec. 51; 2 Jaggard on Torts, 896.

The court will find in *Bennett* v. *R. R. Co.,* 102 U. S., a very clear and comprehensive opinion by Justice HARLAN on the obligations of railroad companies and others toward persons who have been *invited,* by invitation express or implied, to come to premises in the control of the owner or occupier.

We call the special attention of this court to the fact that so anxious was that great judge not to be misunderstood in his statement of a rather complex proposition, that he wrote, with his own hand the head note or syllabus of the case, as follows:

"The owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises for any lawful purpose is liable in damages to such persons— they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation."

We conceive that the confusion which seems to have occurred

in many of the cases in regard to this principle arises from the failure, in many instances, just as in the case at bar, to distinguish between the occupier and the owner with respect to acts or conditions for which there is not a common responsibility, and those in which there is. Take, for instance, a case of this sort:

A tenant of a lodging house invites a guest to his apartment on business or pleasure. The occupier of a part of the tenement house or hotel has a right to demand of the owner of the building safe ingress and egress. Therefore, it is the duty of the owner of the building to provide proper and safe stairways, hallways, etc. If a person induced or invited to visit the occupier of an apartment, is injured by a defect in that portion of the building under the control and authority of the owner of the premises, then the owner of the premises would be liable in damages to the injured person.

But, suppose that the owner of the premises has performed all of his duties, and has provided safe approaches, hallways, etc., and the visitor on business or pleasure safely reaches and is admitted to the apartment of the occupier thereof, and thereafter while in said apartment, on business of his own with the occupier, and business with which the owner of the apartments has no concern, and in which the owner of the premises has no interest, is injured, by some negligence, willful or otherwise, of an employe of the occupier, would anybody contend, under such circumstances, that the owner of the premises was liable to the visitor in damages. And this is the distinction which runs through all these cases.

The distinction which obtains, is well explained in 2 Jaggard on Torts, 896, under the heading of "Test of Mutuality."

"An invitation to go on the premises of another imposes a duty to prevent harm to a person accepting it. Such invitation may be express or implied, and depends upon mutuality of interest. Invitation, therefore, in the technical sense, differs

from invitation in the ordinary sense, implying the relation of host and guest. 'It is well settled that to come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be one for the benefit of the occupant.' For example, if a person called at the office of a manufacturer's establishment for, and is granted, permission to see an employe, and while searching for such employe is injured by the machinery, the peril of which was hidden, there can be no recovery. 'To require the proprietor of a steamboat, factory, or a mill, conducted in the usual manner, whenever a man should ask permission to see an employe engaged in his duties, to anticipate that such person might become involved in some dangerous machinery, hidden or open, would be to exact too high a degree of diligence; but the presumption should be indulged that the person making the inquiry is acquainted with the machinery, its construction and position, and needs no attendant, or otherwise he would have made a request to that effect.' "

The court will observe that the fundamental and necessary averment must be that the business which carried the visitor to the place of injury was a business in which both the occupier and the owner had an interest, or in regard to which a common duty rested on both. It is true there are certain obligations resting on a railroad company under the law, of which it cannot rid itself by delegating to others the right to exercise any of the corporate powers or to use any of the corporate instrumentalities. Thus, if a citizen had been injured on the railroad tracks, or at some highway crossing by the circus train, or by some defective appliance thereof, the railroad company could not be heard to say that the wrongful act was done by the circus

people about their own business, because in such a case as this there is a common duty resting on both the railroad company and the circus people toward a citizen who is at a place where he has a right to be, and where, because of public policy or statute law, the railroad company has been required to discharge certain obligations to the public at large, a constituent member of which, the injured party is entitled to claim to be. But that argument has no place in a case such as the one here presented.

. In this case appellee did not go to the depot to see the railroad company in regard to any business of the railroad company or in which the railroad company had any interest. The functions of the railroad company are to supply transportation for freight and passengers, and to fulfill all duties in connection therewith. It provided a proper and safe place for passengers, and it provided a business office for the transaction of business connected with the railroad company. It was no item of business connected with either of these departments or any other department of the operation of the railroad company, admittedly, which carried Mrs. Lucas to the station. She went in regard to a matter exclusively of circus interest and under a contract exclusively with circus business. There was no defect in the depot or its grounds; there was no negligence on the part of any agent of the railroad company which violated any right which she had a right to enjoy as a member of the public at large. It was a case where, reasoning by analogy, the guest (Mrs. Lucas) of the occupier (the circus people) was not injured by any defect in the premises for which the owner (the railroad company) could be held responsible, but the appellee (the invited person) using safely the instrumentalities of the owner (the railroad company), was injured by the alleged negligence of a servant of the occupier (the circus people) while appellee was there to see the occupier on private business between appellee and the occupier, in which the railroad company

had no interest, benefit or concern (a contract with respect to a proper location of the show tents on premises leased by private contract with the circus people for exhibition purposes).

In connection with the foregoing proposition we desire to submit to the court the proposition that under the facts of this case Mrs. Lucas, so far as the railroad company was concerned, barely escaped the position of an actual trespasser—certainly she was nothing more than a bare licensee. For she did not remain at the place provided for passengers or for persons there on business, but went on beyond the building, crossed over from the building to a freight platform south of the building, then went on down to the extreme southwest corner of this platform, and there took her position with her husband and children, and in the very midst of the excitement and dangers of the unloading of a great circus and menagerie. This platform was used by the railroad company only for the purpose of loading and unloading freight cars. It was near a switch track on the extreme southwest portion of the grounds, and on the opposite side of the building from the main passenger track and the concrete walk and the offices and the depot waiting room.

Not having had any invitation from the railroad company either to go there specially for a special purpose, or to go there generally, under some general invitation to the public, to use that freight platform for her own purpose, she was, so far as the railroad company was concerned, in a place where she had no right to be, and she barely escaped being a trespasser.

Certainly she was nothing more than a bare licensee. As shown by Justice HARLAN in the *Bennett case, supra,* there is a difference in the rights of a person who goes on premises as a trespasser or bare licensee, and of a licensee who goes to such place by invitation express or implied. And appellee having been at most a bare licensee, comes under the operation of the rule that "a bare licensee takes his license with all its concomitant risks and perils." *Baltimore, etc.,* v. *State,* 50 Am.

Rep., 233; *McLaurin* v. *R. R. Co.,* 83 Ind., 319; *Memphis R. R. Co.* v. *Womack,* 84 Ala., 149; *Redigan* v. *Boston R. R. Co.,* 155 Mass., 44; *Crane Elevator Co.* v. *Lippert,* 63 Fed. Rep., 932; *Farris* v. *Hoberg,* 134 Ind., 269. Her whole testimony evidences the fact that she voluntarily went to the position where she was injured, on her own private business.

This last patent fact being admitted both in the record and in the brief for appellee, we desire, finally, on the first proposition of our brief, to call the attention of our court to the case of *Andrews* v. *R. R. Co.,* 86 Miss., 132 (s.c., 38 South. Rep., 773), the most recent utterance of this court along this line, where the very point made here was applied to one Travis, who went to the depot on private business of his own, not connected with any railroad business, and became involved in a controversy with the agent, in regard to a personal and private matter. Judge TRULY in the opinion in the case, says:

"Under no theory of law applicable to the facts disclosed by this record can any liability attach to the appellee. It is perfectly obvious that the relation of carrier and passenger did not exist between appellant and appellee at the time of the difficulty between appellee and Travis. . . . The prime object of his going to the depot at that hour was that he might have a comfortable and convenient place in which to transact the business of writing up his daily insurance reports, a strictly private matter."

The next proposition we desire to submit to the court is that wherever an individual seeks to recover from a railroad company on account of injuries alleged to have been inflicted upon him negligently by the agent or lessee of the railroad company, in order to hold the railroad company responsible, it must be shown that the negligence resulted from the breach of a duty and direct obligation from the railroad company to the person injured, or from the breach of a public duty. In other words, in order to take advantage of any theory that the circus people

were, under the facts of this case, the lessees or agents of the railroad company, and that the lease being unauthorized, the railroad company is liable for the acts of its agent, it must be shown, first, that the contract of lease or temporary use in force between the railroad company and the circus people was illegal and unauthorized and the breach of duty was one which, in the absence of the lease, would have imposed responsibility, primarily, on the railroad company.

The general obligation of the public which, under the law, rests on the owner railroad company which has executed lease of its property and franchises, is well stated in the case of *Hukill* v. *Mayersville, etc.,* 72 Fed. Rep., 745, as follows:

"The owner of a railroad by virtue of its charter assumes the obligation to perform certain duties for the public in carrying freight and passengers and in observing the statutory precautions for the protection of the public from danger in the operation of its railroad; and when by leasing its road it unlawfully shifts to another company the burden of the discharge of its duties, any loss resulting to any member of the public from a failure by the lessee to discharge them, may be made the basis of a claim for damages against the lessor company."

The court will also find in the case of *Caruthers* v. *K. C., Ft. Scott & Memphis R. R. Co.,* 44 L. R. A., 739, a consideration of this proposition.

We submit, however, that the contract for transportation which had been entered into between the railroad company and the circus people was a legal and proper contract and did not fall within any of the inhibitions with respect to the transfer or lease of corporate franchises. It was purely a matter of personal contract between the railroad company and the circus people, and the prime object of it was to fix the rights, duties and liabilities of the railroad company and the circus people between themselves.

We have, however, this amusing condition of the record and

the controversy: Appellee claims that the circus people engaged in unloading the car were under an alleged lease, and were under the law the lessees and agents of the railroad company, and yet the very lease on which this proposition is based was excluded by the court on the objection of plaintiff. In other words, so far as this record goes, there is no proof of any contract of lease between the railroad company and the circus people, for the evidence of this was excluded, wrongfully we submit, by the court, at the instance of plaintiff. But the case at bar comes within none of the cases where a lessor company is held responsible for the acts of a lessee company or its agents. The distinction is clear.

In the case of *East Line R. R. Co.* v. *Culbertson,* 72 Tex., 375, an employe of the lessee company was held to have no right of recovery against the lessor company where the conductor was an employe of the lessee, the engine was furnished by the lessee and operated by its employes. In *Texas & Pacific R. R. Co.* v. *Mangum,* 68 Texas, it was held that there was no liability on the lessor company to a person who had been injured going to an *eating house* over premises which were owned by the railroad company, but which had been formally leased by it to the owner of the eating house. And in the case of *Evans* v. *Railroad Company,* 18 S. W. Rep., 493, an employe of the lessee company could not recover against the lessor company where the injury received was from defective appliances.

But the whole matter of lease or alleged transfer of corporate franchise has no part or place in the discussion of the principles which ought to control in the determination of the case at bar.

*S. L. Dodd,* for appellee.

We contend that the appellant company is liable for the negligence of every one who is directly concerned with the management and operation of its trains. No corporation exercising public or quasi-public duties can lease its property without the consent of the legislature. Thompson on Corporations, vol. 4,

sec. 4520; 7 Am. & Eng. Ency. Law (2d ed.), 747.    The appellant company must be held liable for the injuries sustained by Mrs. Lucas, and cannot escape liability for her injuries by reason of any lease to the B. E. Wallace Show Company, nor by any contract the appellant company may have made with said show company in regard to exemption of the lessor, the railroad company, from liability.    For it has been held by the supreme court of the United States that a railroad company permitting another to use its track is liable to a person injured by the negligence of the party to whom such permission was granted. *Railroad Co.* v. *Barron,* 5 Wall (U. S.), 90. Furthermore, a railroad company is liable for the acts of all persons to whom it confides the management and control of its road as fully as though the same were operated under the immediate control of the agencies granted by its charter. 44 L. R. A. 709, and notes thereunder.    It has been held in the case of *Pennsylvania R. R. Co.* v. *Ellette,* 24 N. E., 559, an Illinois case, that a railroad company allowing another corporation to run trains over its road is jointly liable with such other corporation for injuries caused by the negligent management of such trains.

Under the arrangement between the appellant railroad company and the Wallace Show Company the appellant company was legally liable for injuries sustained by Mrs. Lucas.    A railroad company is liable for all damages caused by a lessee's negligence in the management and control of the railroad and its affairs.    2 Elliott on Railroads, sec. 473; 57 Fed. Rep., 165; *Lakin* v. *Williamette R. R. Co.,* 11 Pa., 68.    A railroad company which leases its road and corporate franchises to another is exempt from liability for negligence in the operation of the road by the lessee only in case the lease was under legislative authority and no control was reserved by the lessor.    But if the lessor should continue even in partial control and management of the road it will be liable in cases where the lessee may be held liable.    See notes to 44 L. R. A., 709, and notes to 49 L.

R. A., 737. Both lessors and lessees are jointly liable for negligence in the management of the road where the lease under which the lessee operated was unauthorized. 2 Elliott on Railroads, 476.

Inasmuch as the railroad company continued to have charge of its road and equipment under its relationship with the show company, and inasmuch as whatever agreement existed between the two companies was in no way ratified by legislative enactment, it should follow from the above decisions that the railroad company should be liable for the injuries sustained by the appellee.

*Alexander & Alexander,* and *Geo. B. Power,* on the same side.

It must be admitted by counsel for appellant that there are some obligatons resting upon a railroad company from which it cannot rid itself by delegating to others the right to use its franchise. For instance, if a party were injured at a crossing or as a result of some defective appliance on the train, even though the circus company had charge of the train, the railroad company would be liable.

The point is so well settled that a railroad company cannot by a contract, without permission of the legislature, relieve itself from liability or from a duty it owes to the public, that we hesitate to cite authorities. Opposing counsel, however, have so earnestly questioned whether the railroad company is liable in this case that we feel an examination of the point should be made. In *Pennsylvania. R. R. Co.* v. *Ellette,* 132 Ill., 654, it is held by the supreme court of Illinois that the grant of a franchise to a railroad company carries with it the duty to so control its railroad as to do no unnecessary damage to the person or property of others, and when injury results from the negligence of a party having a license or contract to use the railroad company's tracks the company will be liable. Another leading case is *Macon, etc., R. R. Co.* v. *Mayes,* 49 Ga., 355, which holds that a company having a railroad franchise is liable for torts

to third persons by another company running cars over its tracks just the same as if the company owning the railroad were itself running the cars. And see *Railroad Co.* v. *Dunbar,* 20 Ill., 623; *Railroad Co.* v. *Brown,* 17 Wall., 445; *Singleton* v. *R. R. Co.,* 70 Ga., 464. Where a company uses the tracks of another by consent, whether such consent is authorized or not, the servants and employes of the company so using the tracks will be regarded as the servants and agents of the owner company. *Illinois Central R. R. Co.* v. *Finnigan,* 21 Ill., 646; *Nelson* v. *Vermont, etc., Railroad Co.,* 36 Vt., 717; *Balsley* v. *St. Louis, etc., R. R. Co.,* 119 Ill., 68.

A distinction is made in the courts between a railroad corporation and other corporations. To announce the doctrine that such a powerful agency and such a dangerous instrumentality as a railroad company is not liable for the negligent acts of those whom it invites to use its tracks and from whom it receives a liberal compensation for such use, would be announcing a doctrine not only contrary to every decision, but one eminently dangerous to the whole public. The licensee in a measure operates under the franchise granted to the railroad company and thus becomes the agent of the company. And as the railroad company cannot by contract with a lessee release itself from its duties and obligations placed upon it by its charter, it must follow that the negligence of the lessee, in the absence of legislative enactment to the contrary, would in practically every case make the lessor railroad company liable. See *Baldsley* v. *St. Louis, etc., R. R. Co., supra; National Bank* v. *Atlanta, etc., R. R. Co.,* 25 S. C., 216.

Certainly the railroad company would be liable if Mr. Lucas had been hurt at a crossing or while the train was being operated on the railroad company's tracks. Then, if the railroad company is liable so long as the train of the lessee company is being operated on its track, where is the distinction line to be drawn? Does the railroad company become immedately re-

lieved of all liability on the stopping of a train of the lessee at its destination? The circus company while on the grounds of the railroad company was practically identical with the railroad company; it performed the duties of the railroad company, carried freight and passengers, and under the decisions is to be considered the same as a railroad company. When Mrs. Lucas was injured she was standing upon the grounds of the railroad company, was injured by the paraphernalia of the circus while being unloaded from the cars on the railroad company's track and on the railroad company's premises, and she was hurt through the negligence of the agents and employes of the Wallace Show Company, which was operating the railroad. She was thus constructively injured by the agents and employes of the appellant railroad company.

We fail to see where the unloading of a train is any less its operation than the running of a train. The railroad company certainly contemplated that at every destination of the lessee's train the lessee company would unload its cars for exhibition, as much as it contemplated that the lessee company would transport such goods to be unloaded. The unloading was as important a part of the transportation as the actual journeying from place to place.

Counsel for the appellant company claim that Mrs. Lucas was nothing more than a bare licensee; that she was on the grounds of the railroad company on her own private business, in which the appellant railroad company had no interest. To support this contention the case of *Andrews* v. *Yazoo City, etc., R. R. Co.,* 86 Miss., 129 (s.c., 38 South. Rep., 773), is cited. But the facts in that case are entirely dissimilar to the circumstances here. In that case one Travis, an intending passenger on appellee's train, went to the station several hours before train time to write a report to an insurance company in regard to his business transactions. He went there because there was no other quiet and convenient place

to go. He there became involved in a difficulty with the railroad company's agent over a matter entirely foreign to the business of the company, and having nothing to do with the business for which he was on the premises. His business had nothing to do with the railroad company or its agent. But Mrs. Lucas was invited by the manager or agent of the circus company to come down to the grounds, of the railroad company where she was hurt. The grounds were at the time being used by the show company under its contract with the appellant company. There was no other convenient place at which she and the manager of the circus company could attend to the business in hand. The business matter she had in hand was of some importance, being in regard to the placing of the circus tents so that her trees upon the premises should not be injured. It was of importance for the manager to see Mrs. Lucas, as he had to know where to unload his wagons and other equipment. This manager had a right to invite Mrs. Lucas, and she had a right to proceed upon his invitation, to these grounds, even though they were owned by the railroad company. Hence, instead of her being a bare licensee, she was there by the express invitation of the lessee company, and accordingly the railroad company was liable for injuries sustained by her.

Third persons on the premises of a railroad company may be classed as trespassers, bare licensees, licensees, and those present by invitation. Now under which of these classes is Mrs. Lucas? Certainly not under the first or second. Nor was she a mere licensee. She was present by the express invitation of one who under the circumstances may be held to be a representative of the railroad company. Counsel for the appellant company quote from Jaggard on Torts on the "Test of Mutuality," contending that there must be a common interest between the owner company, the show company, and appellee. We also quote from the same paragraph: "An invitation to go on the premises of another imposes a duty to prevent harm to a person accepting it.

To come under an implied invitation the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there." The car of the manager of the show company was his only office, and the grounds of the railroad company were the only approach thereto. It must have been in the contemplation of the railroad company that this private car, the home and office of this transient manager, would be used to receive people to be consulted on business, and that people would be invited to the car to make arrangements regarding matters which were essential to the business the manager was conducting under the contract of the circus company with the railroad company.

On the day Mrs. Lucas was injured the circus company was using practically all the facilities at the depot for its purposes. Mrs. Lucas in addition to being at the place of injury by invitation, was at the place where the injury occurred, the depot platform, as a result of its being pointed out to her by the manager of the unloading department of the circus company as a place where she might await the coming of the manager of the circus company. The agent of the circus company requested different men to step aside in order that Mrs. Lucas might occupy this place. She proceeded to this platform, some five feet high, rather than stand on the ground, and in doing so she placed herself not only where she could see the manager, but where she and her children who were with her would be apparently safe from all danger. As she was hurt upon the platform we think that even if Mrs. Lucas was a licensee the railroad company owed her a higher duty than characterized its action under the circumstances.

It is significant that the agreement between the Wallace Show Company and the appellant railroad company provided that the Wallace Show Company should indemnify the railroad company for all damages for injuries. The learned attorney who drew the contract for the companies must have anticipated just such a case as this.

MAYES, J., delivered the opinion of the court.

The only assignment of error which we deem it necessary to notice is that which brings into review the action of the circuit judge in refusing the peremptory instruction asked for appellant in the trial of the cause in the court below.   There can be no dispute as to the proposition contended for by appellee that the railroad company cannot excuse itself from liability by any contract which it may enter into with a lessee, where damage is done by the negligence of the lessee in the management and conduct of the railroad and its affairs.   But this rule of law has no application to this case.   The damage done Mrs. Lucas was not caused by the negligence or the mismanagement of the railroad or the railroad company's affairs, either by itself or by any attempted lessee.   The damage suffered by Mrs. Lucas was inflicted by the agents, servants or employes of the circus company, engaged alone in performing a service for the circus company which was peculiarly its own business.   They were not employes, agents or servants of the railroad company, nor were they engaged in any way in the management, control or operation of the railroad at the time the injury was inflicted.   The railroad company had nothing to do with the business which took Mrs. Lucas to the depot.   The business which took her there was a purely private business between herself and the circus people.   She had gone to a place not intended for passengers, and where there was no necessity for her to be in so far as she had any business with the railroad company or the circus.   The railroad company was in no way connected with her business at the depot, and none of its representatives were shown to have any knowledge of it. The injury was not occasioned by any act or omission on the part of any agent, servant or employe of the railroad company, nor by the failure on the part of the railroad company to discharge every duty that it owed to her.   She went to the depot in safety, she proceeded upon the platform in perfect safety, the

damage is not shown to have been occasioned by the operations of the trains in any way, and in fact at the time the damage occurred, so far as the testimony shows, it seems that the cars .of the circus company were standing without motion on the track of the railroad company. The most that can be said of Mrs. Lucas' relation to the railroad company is that she was a mere licensee. The railroad company was under no obligation to her except to do her no willful wrong; and, since there was no duty or obligation resting upon the railroad company to her, there could have been no negligence or breach of duty on its part towards her. The railroad company had not assumed to unload the cars for the circus. It was under no duty to act for the circus in this, and having provided a safe approach for Mrs. Lucas, and she having been injured by the act of the agents, servants and employes of the circus company alone, there can be no responsibility on the part of the railroad company for this injury.

If liability existed anywhere, it is on the part of the circus company and not the railroad company. If a merchant receive a car load of freight, and the railroad company transport it to its destination and place it upon a side track for the purpose of being unloaded, and the merchant should send his agents, servants or employes to the depot for the purpose of unloading this car, and they should negligently injure a party, it certainly would not be contended that the party so injured by the negligent act of the servant or employe of the merchant could hold the railroad company liable. The railroad company was under no duty to unload these cars, and in unloading the cars the agents, servants and employes of the circus company were in no way acting for the railroad company, and it cannot be held liable. A railroad company is not liable for every injury which may be sustained on its property. It is only liable in cases where the injury occurs by some negligent act of an agent, employe or servant of the railroad company, or in the case where it has

failed in some duty which it owes as a railroad to the public. It is not required that a railroad company shall guaranty that shippers over its road in unloading their freight will handle it in such a way as to produce no injury to any one; and if a shipper in unloading freight which has been consigned to him, through the negligence of his servants, agents or employes, injures a party, it is his own liability, and not that of the railroad company.

> *Let the case be reversed and remanded.*