H. WESTON LUMBER Co. *et al. v.* HIBBENS.

(Division A. June 20, 1938. Suggestion of Error Overruled July 25, 1938.)

[182 So. 115. No. 33256.]

Robert L. Genin, of Bay St. Louis, for appellant, H. Weston Lbr. Co.

**T. J. Weaver,** of Picayune, for appellant, Hubert Pearson.

**Gardner & Backstrom,** of Gulfport, for David J. Joseph Company.

Gex & Gex and **Evelyn Hunt Conner**, all of Bay St. Louis, and **Grayson B. Keaton**, of Picayune, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an appeal from a judgment in favor of the appellee for damages from a personal injury sustained by her, as she alleges, because of the negligence of the appellants. The defendants to the appellee's declaration are the David J. Joseph Company, Hubert Pearson and the H. Weston Lumber Company. The two last named defendants will be hereinafter designated as Joseph Company and Weston Company respectively. When the appellee finished introducing evidence and rested her case, the court sustained a motion to exclude the evidence as to Joseph Company and instructed the jury to find a verdict for it. Thereafter the case proceeded against the other two defendants, resulting in a verdict against them. A judgment was then rendered on this verdict, which

judgment also included an order discharging Joseph Company from liability. Weston Company and Pearson appealed to this court, and the appellee cross appeals from the judgment in favor of Joseph Company.

Error, vel non, in the ruling of the court relieving Joseph Company from liability must be determined on the evidence then before it, for Joseph Company thereafter had no further concern with the trial of the case and cannot be charged with the evidence thereafter introduced.

The evidence for the plaintiff discloses in substance the following: The Weston Company is a corporation which owned and operated a logging road about ten miles in length, crossing a public highway. On the 22nd day of June, 1935, about 6:30 in the afternoon, the appellee was travelling in an automobile driven by another along this public road. When the automobile arrived at this crossing it was brought to a stop and the driver thereof looked and listened, but saw no locomotive or car on the railroad track. The view down the railroad track, from which the engine and car hereinafter mentioned came, was cut off by high weeds and bushes extending along the railroad right of way up to the public road. The automobile then proceeded to cross the track and was struck by a gasoline engine to which was attached a car loaded with iron rails, resulting in a severe injury to the appellee's foot. No signal of any sort was given of the approach of this engine, and no flagman was stationed on the crossing to warn travelers on the highway of the approach of this engine and cars. The brakes on this gasoline engine were defective.

On May 6th, 1935, Weston Company sold the iron rails on this road to Joseph Company by a written contract for $9.25 per gross ton, to be delivered in railway cars free at ship side New Orleans, Louisiana. $4,000 was paid by Joseph Company on the signing of this contract, the remainder to be paid at the end of sixty days therefrom. Three weeks' notice was to be given Weston Com-

pany of the arrival of the ship, the title to the rails to be in Joseph Company on the execution of the contract. The invoices for the rails were to show deduction on the freight on the rails to their destination, or be accompanied by bills of lading showing freight prepaid thereon.

Pursuant to this contract, the rails were being taken up, beginning at one end of the road, and transported over it to Picayune, where they were to be delivered to the N. O. & N. E. R. R. Company for shipment to Joseph Company at New Orleans, Louisiana. Bills of lading therefor were issued by the N. O. & N. E. R. R. Company to Joseph Company, as shipper, consigned to a steamship, care of Joseph Company at New Orleans. The rails in the car which the gasoline engine was pulling at the time of the appellee's injury were of the rails sold by Weston Company to Joseph Company.

Klein, for the appellee, testified that in May or June, 1935, he went to the New Orleans office of Joseph Company, in order to ascertain, for purposes of his own, whether these rails were the property of Weston Company, and while there, Fechheimer, Joseph Company's agent in charge of its New Orleans office, had a long distance telephone conversation with Pearson, at the conclusion of which he (Klein) said to Fechheimer:

"I understand that Hubert Pearson is always working for Weston Lumber Company," and he says, "He did, but right now he is working for me and my rails," and I says, "Are you sure it is your rails and not Weston's," and he says, "They are mine, I bought them on the ground."

This evidence was objected to by Joseph Company, but the Court reserved its ruling and seems not to have thereafter ruled thereon. The appellee then rested her case, and the evidence, insofar as it affected Joseph Company, was excluded and the jury was directed to return a verdict for it.

In support of her contention that the court below erred in holding that the evidence, when she rested her case, disclosed no liability on the part of Joseph Company, appellee says that it appears therefrom that Joseph Company, itself, was engaged in hauling the rails to Picayune over the logging road, and that Pearson was its servant in so doing.

The contract by which the rails were sold to Joseph Company required Weston Company to deliver the rails to Joseph Company at New Orleans, Louisiana, and this evidence was insufficient to show that the contract had been departed from, and that Joseph Company was itself engaged in taking up the rails and hauling them to Picayune for shipment to New Orleans. Fechheimer's admission, if competent, does not disclose what character of work Pearson was doing for Joseph Company—does not show that he had been employed by Joseph Company to haul rails for it. Moreover, it does not appear that making this admission was within the scope of Fechheimer's employment, but on the contrary, it affirmatively appears not to have been made during, or as a part of, the transaction of any business by him for Joseph Company, and therefore, could have no effect on the rights of that Company. No error was committed in the exclusion of the appellee's evidence, insofar as it affected Joseph Company.

Weston Company and Pearson then introduced evidence to the following effect: In addition to selling the rails of the logging road to Joseph Company, as hereinbefore set forth, Weston Company had sold the cross ties on which the rails were laid to Pearson, but when delivery thereof was to be made does not appear. Weston Company ceased to operate the logging road when the rails thereof were sold. It continued to own the land over which the railroad was laid, and gave Joseph Company permission to use it "until the rails were taken up." Under an agreement with Joseph Company it employed

Pearson for and on behalf of that company to take up and haul the rails to Picayune for a stated consideration per ton. Pearson's compensation was paid him by Weston Company, which Company thereupon drew and collected a draft on Joseph Company therefor. Joseph Company also paid the railroad charges for transporting the rails from Picayune to New Orleans, both of which items of expense were deducted from the $9.25 per ton agreed to be paid by Joseph Company for the rails. The gasoline engine which Pearson was using at the time of the appellee's injury was owned by Weston Sand & Gravel Company and had been loaned by it to Pearson. There were no weeds or bushes along the railroad right of way, and when the gasoline engine driven by Pearson approached the highway on the occasion in question it was running not more than five miles per hour, and while no signal was given of its approach, the noise made by the engine, because of its muffler having been cut out, was loud enough to have been heard for more than five hundred yards. Pearson stationed a man on the crossing to warn travelers thereon of the approach of the gasoline engine by waving his hat, and this he was doing as the automobile in which the appellee was riding approached the crossing. Pearson saw the automobile some distance before it reached the crossing, but thought the driver thereof would heed the warning of the flagman and not attempt to cross, and he did not realize that it would not stop until it entered the crossing just ahead of the gasoline engine, too late for him to prevent the collision. When he saw that the collision was imminent, he stepped off of the gasoline engine. The automobile then struck the engine and was dragged by it across the highway when the gasoline engine left the track and stopped.

At the close of the evidence, Weston Company and Pearson each requested but were refused a directed verdict. We do not understand Counsel to argue that the court below erred in refusing a directed verdict for Pearson, and, manifestly he was not entitled to it.

The contention of Weston Company is that it had ceased to operate the road, had lost the right so to do when it sold the rails thereof to Joseph Company, and had turned it over to that Company for use by it in transporting the rails to Picayune, which obligation the Joseph Company had assumed.

The owner of a railroad, public or private, may, by a valid sale or lease thereof to another, relieve itself from liability for the negligence of such other in the use of the railroad; but, in the absence of such a sale or lease, permission by the owner of the railroad to another to run cars over it does not relieve the owner of liability for the negligence of such other in running cars over the road. Illinois C. R. R. Co. v. Lucas, 89 Miss. 411, 42 So. 607; Estes v. Memphis & C. Ry. Co., 152 Miss. 814, 119 So. 199; Illinois C. R. R. Co. v. Barron, 5 Wall. 90, 18 L. Ed. 591; 1 Elliot on Railroads (3 Ed.), sec. 541; 51 C. J. 1101.

Weston Company had not sold the road as an entirety, but only the ties and rails thereof. It continued to own the right of way (the land over which the ties and rails were laid and the right to run cars over this highway) and had the right to lay other ties and rails over this right of way, and to continue to run cars over it. The only right which Joseph Company had to run cars over this right of way and across this highway was the permission given it by Weston Company so to do, consequently the case is within the spirit and purpose of the rule immediately hereinbefore stated. The right of Weston Company to cross this highway with its railroad was burdened with the duty of observing due care when running its cars across the highway to prevent injury to travelers thereon. Whether the cars were being run by it or another with its permission is of no consequence, for, by permitting another to run the cars, it charged itself with such other's negligence in so doing.

But it is said by Counsel for the Weston Company that Pearson was not its or Joseph Company's servant for

under his contract with Joseph Company he was an independent contractor, and this, for the purpose of the argument, we will assume to be true. What Pearson's exact relations with Joseph Company were is of no consequence, for his right to the use of the railroad was given him by it, and when Weston Company permitted Joseph Company to run cars over its right of way which crossed this highway, it became charged with the negligence of Joseph Company in so doing, and also with the negligence of others who were exercising this right with the consent and on behalf of Joseph Company.

The court below committed no error in refusing to direct a verdict for Weston Company.

On the evidence, no error appears in the other rulings of the court below complained of by Pearson, and we are unable to say that the verdict is excessive.

Affirmed.