Furr *et al. v.* Brookhaven Creamery Co.

(Division B.   Oct. 30, 1939.)

[191 So. 684.   No. 33829.]

(1)

(Division B.  Jan. 8, 1940.)

[192 So. 838.. No. 33829.]

**Brady, Brady, Phillips & James,** of Brookhaven, for appellee on motion to strike stenographer's notes from the record.

4

R. L. Jones, of Brookhaven, M. S. McNeil and J. H. Garth, both of Hazlehurst, for appellants on motion to strike stenographer's notes from the record.

**M. S. McNeil, R. L. Jones,** and **J. H. Garth,** for appellants on merits.

8

**Brady, Brady, Phillips & James,** for appellee, on merits.

Argued orally by **R. L. Jones**, for appellants, and by **T. Brady, Jr.**, for appellee.

·ON MOTION TO STRIKE.

**McGowen, J.**, delivered the opinion of the court on motion to strike.

On the appeal of Furr and others, as heirs at law of Albert Furr, the appellee, the Brookhaven Creamery Company, moves to strike the stenographer's notes on file herein from the record.

The undisputed facts pertinent to this motion are as follows: A. L. Furr and others, as next of kin and heirs at law of A. E. Furr, brought an action for damages against the Brookhaven Creamery Company and Hugh Nettles, alleging negligence on the part of Nettles as the agent or servant of the Brookhaven Creamery Company, causing injuries to Albert Earl Furr resulting in death.

In the trial of the case in the court below at the conclusion of the appellants' evidence, the Brookhaven Creamery Company and Hugh Nettles, the defendants

there, moved the court to exclude the evidence offered by the plaintiffs and grant to each of them a peremptory instruction.

The court below granted to the Brookhaven Creamery Company a peremptory instruction and entered a separate judgment for that defendant on that instruction. The court overruled said motion as to Hugh Nettles. Thereafter the evidence was offered before the jury on behalf of Hugh Nettles and rebuttal thereto, six or seven witnesses being examined. According to the stenographer's certificate, which is undisputed, while the last witness was on the witness stand plaintiffs in the court below entered a motion for a non-suit on the ground that Nettles was insolvent. The court sustained the motion and the order was accordingly entered. Several days later appellants here, plaintiffs in the court below, made a motion for a new trial, alleging as ground therefor the action of the court in granting a peremptory instruction in favor of the Brookhaven Creamery Company. That motion was overruled by the court as shown by the order now in this record from which an appeal is prosecuted to the Court by Furr, et al.

In making up the record the attorneys for the appellants instructed the stenographer not to transcribe her notes of the evidence taken on behalf of Hugh Nettles subsequent to the granting of the peremptory instruction, and the entry of the judgment discharging the Brookhaven Creamery Company from liability.

The stenographer so transcribed the notes in due time, upon due notice, and also in compliance with the instructions of plaintiffs' attorneys, only transcribed the notes of the evidence introduced by the plaintiffs prior to the time the court below granted the peremptory instruction in favor of the Brookhaven Creamery Company, and did not transcribe the notes of the evidence offered by Hugh Nettles in his defense to the action. When the stenographer filed a transcript of her notes in due time, upon due notice, she notified all the attorneys

of the filing of the transcript of the notes of the evidence, but the record shows that the appellants' attorney at no time indorsed on the notes a certificate at the expiration of ten days, that the said notes had been delivered or mailed to the attorneys for the appellee. In fact, this was not done by appellants' attorneys. In this state of the record, the stenographer's notes would be stricken from the record because of the failure of counsel for the appellants at the expiration of ten days, the time allowed appellants' attorneys, to examine and correct the record, to certify that the said transcript was mailed or delivered to appellees' attorneys. This is required by Section 726, Code of 1930, but under Section 728 it is provided that: "If notice as above required is given to the court reporter by appellant or his counsel within ten days after the conclusion of the terms of court, no court reporter's transcript of his notes shall be stricken from the record by the Supreme Court, for any reason, unless it be shown that such notes are incorrect in some material particular, and then only in cases where such notes have never been signed by the trial judge, nor been agreed on by the parties, nor become a part of the record as provided by this chapter."

The transcript in this case had never been signed by the trial judge, nor been agreed on by the parties, nor had the certificate of the delivery of the record as corrected been attached thereto by appellants' counsel. In the case of Wilkinson v. Love, 149 Miss. 517, 111 So. 457, 458, we held as follows: "The stenographer's certificate to the transcript discloses that he filed it within the required time, and notified the attorneys thereof, but no certificate of the appellant's attorneys is indorsed thereon disclosing that they delivered or mailed it to the appellee's attorneys; consequently the transcript did not become a part of the record as provided by the statute, from which it follows that, if it is incorrect in some material particular, we must strike it from the record."

Then the question is squarely presented that the evi-

dence offered subsequent to the granting of the peremptory instruction for appellants here is material, in that it shows that Hugh Nettles was not liable in the action, and therefore the Brookhaven Creamery Company for that reason could not be held liable, and therefore the court below did not err in overruling the motion for a new trial.

Assuming that the evidence offered on behalf of Nettles after the Brookhaven Creamery Company had been discharged from liability by judgment duly entered might be material, in that it tended to bolster or support the action of the court below when it granted the peremptory instruction to the appellee, Brookhaven Creamery Company, we know of no rule of law by which the trial judge on a motion for a new trial could look to the subsequent record for evidence to support the ruling of the court in granting a peremptory instruction at the time it was granted. When the peremptory instruction was granted the Brookhaven Creamery Company was no longer concerned with the trial between the plaintiffs and the defendant, Nettles. It was no longer concerned with his liability and upon a motion for a new trial, the question is, did the court err in granting the peremptory instruction at the conclusion of plaintiffs' evidence. We think this case has been settled in H. Weston Lumber Co. et al. v. Hibbens, 182 Miss. 669, 182 So. 115, 116, in which case Hibbens sued H. Weston Lumber Co., Pearson and David J. Joseph Company. At the conclusion of the plaintiffs' evidence the court granted to Joseph Company a peremptory instruction and thereafter proceeded with the trial against the remaining two defendants. A verdict and judgment was rendered against them. Weston Company and Pearson appealed to this Court and Hibbens filed his cross-appeal from the judgment in favor of Joseph Company. In that state of the record, this Court said: ''Error, vel non, in the ruling of the court relieving Joseph Company from liability *must be determined on the evidence then before it, for Joseph Company there-*

*after had no further concern with the trial of the case
and cannot be charged with the evidence thereafter in-
troduced.''* (Italics ours.)

So we must say in this case that the Brookhaven
Creamery Company cannot be benefited by the evidence
thereafter introduced, in the litigation between the plain-
tiffs and Nettles, that is, after it had been discharged
from liability on a peremptory instruction. A motion
for a new trial does not change this sound rule, nor do
we understand that on such a question the trial judge is
invested with any more power or discretion than is this
Court. If this Court could not look to the subsequent
record, then how could the trial judge on a motion for
a new trial include evidence offered subsequent to its
action in granting the peremptory instruction so as then
to bolster or support that instruction, although it might
have been improperly granted at the time the evidence
for the plaintiffs was concluded. It will not do to hold
that evidence offered after a party has been discharged
from the court is either to bind him or be charged against
him or to operate in his favor or otherwise affect the
ruling of the court theretofore made.

We are of opinion that the case of Dickerson v. West-
ern Union Telegraph Company, 111 Miss. 264, 71 So. 385,
has no application to the undisputed facts in this motion.
The question there was when a judgment became final
as to several defendants and when the statute as to time
for appeal began to run, and in that case it was held as
to appeal that the judgment was not final for purposes
of appeal to this Court until a judgment had been en-
tered as to all the defendants.

We conclude in this case that the evidence offered by
Nettles after the Brookhaven Creamery Company had
been discharged from liability by the judgment of the
Court or the granting of the peremptory instruction can-
not be held to affect materially and favorably or ad-
versely the appellee here.

Motion overruled.

## On the Merits.

**McGowen, J.**, delivered the opinion of the court on the merits.

On September first, 1936, Earl Furr was run over by a truck loaded with milk, driver by one Hugh Nettles; and from the injuries suffered he died in about fifteen minutes. The heirs at law brought an action for damages for the death of their intestate against the Brookhaven Creamery Company and Hugh Nettles, alleging that the latter was the agent or servant of the Creamery Company. At the conclusion of the evidence for the plaintiff in the court below, the judge granted a peremptory instruction in favor of the Creamery Company, but held that as to Hugh Nettles it was a question for the jury. From the judgment in favor of the Creamery Company in the court below, the plaintiffs prosecuted an appeal to this Court.

We are of the opinion that the Creamery Company was entitled to a peremptory instruction for two reasons; first, the facts did not warrant the submission of the case to the jury on the question of the liability of Hugh Nettles, should it be held that Nettles was the agent or servant of the Creamery Company; second, that Hugh Nettles was not the employe, agent or servant of the Creamery Company.

Earl Furr, about sixteen years of age, was killed while undertaking to get aboard the truck loaded with milk, en route on the public highway to Wesson, Mississippi, there to deliver the milk to the Brookhaven Creamery Company at its depot. Nettles was driving the truck for Homer Britt, for which he was paid $20 a month by Britt, who owned the truck and hired Nettles; and was himself paid thirty cents per hundred by the farmers or dairymen whose milk was transported in his truck for delivery to the Creamery Company. This charge for hauling was deducted by the Creamery Company from the proceeds

of the milk so transported; and at stated intervals Nettles, driver of the truck, would deliver to the dairymen checks for their milk less the hauling charge, and to Britt for the amount due him for hauling it.

On the morning of the accident sustained by Earl Furr, Nettles was proceeding to Wesson, and when several miles therefrom, and in front of the Furr home, the right rear wheel of the truck, heavily loaded with milk, ran over young Furr, who received injuries from which he died in a few minutes. The home of the Furrs was on the right side of the truck as it proceeded toward Wesson. The driver, Nettles, was seated on the left side, while beside him on the seat, on the right side of the truck, was Miss Smith. The only eye-witness of the accident, Mrs. Furr, mother of the decedent, was examined in respect to the details of the accident. She was about fifty steps from where it occurred. Miss Smith, although in court, was not examined. Hugh Nettles, driver of the truck, was placed upon the witness stand by the plaintiffs in the court below, but was carefully not examined in regard to the details of young Furr's death. Miss Smith was in the courtroom, and although she was certainly in a position to know the circumstances surrounding the fatal accident to the boy, she was not called as a witness.

Mrs. Furr's testimony was to the effect that her son was accustomed to ride with the driver, Nettles, to Wesson two or three times a week; that on the morning in question her son raised his hand to flag Nettles, who was looking at the highway in the direction in which he was proceeding, and as the truck passed the boy at a speed of eight or ten miles an hour, he caught the door of the cab, and as the truck speeded up, fell and was run over by the rear righthand wheel of the truck. She further said she believed that the driver, Nettles, saw her son immediately before and at the time of the accident; but on cross-examination admitted that she did not know

whether Nettles saw her son flag the truck and attempt to board it.

We are of opinion that in order to predicate negligence on the part of Nettles it was necessary to show, either by direct testimony or such circumstances as would lead to the fair inference, that Nettles saw young Furr, and negligently speeded up his truck while aware of Furr's effort to board it; and that he could have foreseen that increasing speed at that moment might result in injury to Furr. We do not think that it can fairly be inferred from Mrs. Furr's evidence that the driver of the truck was aware of Furr's perilous situation when he speeded up the truck.

The death of young Furr, therefore, as shown by this record, was not due to negligence on the part of Nettles; and the jury could only have reached a verdict for the plaintiff had the case been submitted upon mere conjecture, instead of these facts. The courts cannot base judgment upon mere conjecture or possibility.

The circumstances show, first, that the driver of the truck was looking ahead as he proceeded along the highway, with Miss Smith seated beside him in the cab, between him and the side next to the Furr Home; Nettles was not examined or asked any questions tending to show that he knew or appreciated the situation of the unfortunate young man.

Second, the evidence shows beyond question that Britt, the owner of the truck, had bought the route from another sometime before the occurrence of this accident; that he had employed Nettles to drive; that the Brookhaven Creamery Company had no control whatever over the employment of a driver by Britt. We think the evidence shows beyond question, expressly or by implication, that Britt was the agent or servant of the several dairymen whose milk he transported to the Creamery Company's depot to be processed. The fact is that although several of the dairymen testified that they had no contract with Britt, the circumstances here detailed show

that after his purchase of the route, and his employment of a driver to transport the milk, the farmers placed their milk on the side of the road to be picked up by his truck, received the empty cans back after the milk had been delivered, and received their checks for the net proceeds of their milk, as hereinbefore stated. All of which constituted an implied contract between Britt and the dairymen. By their checks and statements they were aware that thirty cents per hundred pounds was charged for the hauling of their milk. Nothing in the evidence indicates that Nettles was the joint servant of Britt and the Creamery Company. The milk belonged to the farmers until delivered to, and accepted by, the Creamery Company. That Company, in the energetic prosecution of its business, presumably engaged in for profit, had declined to receive split shipments of milk— by which is meant the delivery by a truckman of part of the milk on his truck to the Company, and part to a competing creamery company, causing confusion and delay to one creamery or the other. The Creamery Company had the right to require that the milk should be handled in a sanitary manner before being delivered to it.

At one time, some two or more years prior to this accident, the Creamery Company paid a bonus to the drivers for increased delivery of milk—this to stimulate the activity of the truckmen in securing milk. The more weight in milk the truckman delivered, the larger his bonus; the more milk the creamery received, the larger its business.

The record shows that the manager of the Creamery Company had declined to receive milk from a truckman who trespassed upon the route of another, thus endeavoring to protect the integrity of the routes. One truckman said that he preferred to haul to the other company if the majority of his patrons so desired; and acting in accordance with the will of the majority, he ceased to haul milk to this Creamery Company.

In the case of Kisner v. Jackson, 159 Miss. 424, 132

So. 90, was set forth quite a list of tests as to the relation of master and servant, as distinguished from an independent contract. In the case of Texas Co. v. Mills, 171 Miss. 231, 156 So. 866, 869, this Court, quoting from Rest. Agency gave terse and accurate definitions, so far as possible, of what constitutes a servant, and what constitutes an independent contract.

In the complex and varied relations of the service engaged in, it is impossible to announce any test which would govern all cases. But examining all the authorities, beginning with New Orleans, B. R., V. & M. R. Co. v. Norwood, 62 Miss. 565, 52 Am. Rep. 191, down to and including Meridian Taxicab Co. v. Ward (Miss.), 186 So. 636, 120 A. L. R. 1346, no test has been mentioned which could be applied to the facts of this case, which would authorize holding Nettles to be the servant or agent of the Creamery Company. The case of the Meridian Taxicab Co. v. Ward is more nearly in line with appellant's contention here; but there the facts are so different from the facts of this case as not to be controlling here. No case can be cited with confidence as applying in all respects to the facts of the case at bar. We think that the Creamery Company did not control the truckmen in the details of taking up and delivering milk; all its acts in regard to the handling of milk looked to results at their depots. We think the case falls squarely within the rule and reasoning of Cook v. Wright, 177 Miss. 644, 171 So. 686, and Crosby Lbr. & Mfg. Co. v. Durham, 181 Miss. 559, 179 So. 285, 854. We shall not enter into an analysis of the facts of the case at bar, and comparison thereof with the facts of the above-mentioned cases.

For the reasons stated, the peremptory instruction was properly given.

Affirmed.